### MIDDLESEX BANKING CO. v. EATON, Internal Revenue Collector.

#### (District Court, D. Connecticut. February 11, 1915.)

#### No. 1734.

INTERNAL REVENUE ⬤⇒9—EXCISE TAX ON CORPORATIONS—ASCERTAINMENT OF NET INCOME.

A corporation was engaged in the business of selling to investors so-called "debenture bonds" and "guaranteed real estate securities," the former of which were its own obligations, with interest coupons, payable to bearer and underwritten by a trust company, with which it deposited as collateral security farm mortgage securities payable to itself and bearing a higher rate of interest than the bonds, and the latter being obligations payable to itself, bearing its guaranty and secured by farm mortgages, and to which were attached interest coupons at the rate agreed upon with the purchaser, the corporation retaining separate obligations of the mortgagors securing additional interest. The difference in the interest rates thus paid and thus received represented the gross profit of the corporation on these two classes of transactions. Held, that the corporation was not a "bank, banking association or trust company," within the meaning of Act Aug. 5, 1909, c. 6, § 38, par. 2, 36 Stat. 112 (Comp. St. 1913, § 6301), imposing an excise tax on corporations to be computed on their net income, nor was the interest paid on such obligations interest paid on deposits, which, if it were a banking company, it would, under said section, be entitled to deduct from its gross income.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 13–28; Dec. Dig. ⬤⇒9.]

At Law. Action by the Middlesex Banking Company against Robert O. Eaton, Collector of Internal Revenue for the District of Connecticut. Trial to court. Judgment for defendant.

This case having been heard by the court without the intervention of a jury, by virtue of a stipulation of counsel made pursuant to the provisions of sections 649 and 700 of the United States Revised Statutes (U. S. Comp. St. 1913, §§ 1587, 1668), the following special finding of facts is made:

The plaintiff is a Connecticut corporation having its principal office and place of business in the city of Middletown, Conn. Its original charter was granted by the General Assembly of Connecticut in 1872, and the plaintiff was incorporated under the name of the "Middlesex Trust Company," and by its charter it received many valuable powers and privileges, some of which were afterwards recalled. In 1875, by a subsequent act of the Legislature, plaintiff's name was changed to that of the "Middlesex Banking Company," and it has ever since conducted its business under that name.

Several amendments have been made to plaintiff's charter, the last of which was by act of the General Assembly approved May 17, 1899, which was in force during the period of years covered in this controversy, and it provides that: "The corporation hereby created shall have power to receive on deposit or in custody for safe-keeping, bonds, plate, jewelry, stocks, and

other valuable property upon such terms and for such compensation as may be agreed upon by the said corporation and by the depositors of any such property aforesaid; to receive money on deposit and to allow and pay interest on said money, and to loan the same at interest; to borrow money and issue its obligations negotiable or otherwise therefor, in which obligations, if secured by first liens upon real estate worth at least double the face thereof, holders of trust funds may invest such funds; all the property and estate of every kind belonging to said corporation shall be and stand charged with the fulfillment of said obligations as the first and prior liens thereon in case of the failure of said corporation: Provided, however, that if any trustee or holder of trust funds shall hereafter invest any such trust funds in the obligations of said company as is provided in this resolution such trustee or holder of trust funds shall be personally liable together with the surety on his bond, if any bond be given, for any and all loss or depreciation in value which may result to such funds while so invested, if the real estate securing such investments shall not at all times be worth double the face value of the obligations purchased by such trustee or holder of trust funds."

Aside from its paid-in capital, which at the time of trial was outstanding and considered a liability, and amounted to $338,400, the plaintiff procures the necessary funds with which to carry on its business principally from sales of a form of investment bond which it terms a "debenture bond," with 16 coupons attached thereto, each coupon representing the amount of 6 months' interest, computed at the rate mentioned on the face of the bond (usually 5 per centum) and made payable at plaintiff's place of business in. Middletown, or at the banking house of its New York correspondent. These bonds are issued in consecutive monthly series, and are made "payable to bearer," or, if registered, "to the registered holder" thereof, and are underwritten by the Columbia Trust Company, likewise a Connecticut corporation located at Middletown, Conn.

The plaintiff secures the Columbia Trust Company by depositing with it collateral of sufficient value, consisting chiefly of first mortgages on real estate in the South and West, on which the plaintiff has made loans. Each of these bonds bears the underwriting agreement of the Columbia Trust Company, and makes reference to an agreement entered into by and between the plaintiff and said the Columbia Trust Company, dated June 2, 1897. At the time of hearing this case .the plaintiff had, outstanding something over $3,-000,000 of these bonds which had been purchased and were held by investors. It also had on hand a considerable amount of what it termed "installment bonds" of the denomination of $1,000. These were purchased, from time to time, by investors under an agreement on the part of the purchaser to pay 10 yearly installments of $75 each, and the plaintiff agreed that at the end of the 10 years these bonds, because of the reserve interest earned by the installment payments, would mature and become fully paid up bonds for their face value.

The plaintiff also issued "debenture bonds" in denominations of $100, $200, $250, $500, $1,000, and $5,000, and each bond contained the following clause: "This bond is one of a series of bonds of like form and tenor, issued by said the Middlesex Banking Company under and subject to the provisions of a certain agreement between said the Middlesex Banking Company and the Columbia Trust Company of Middletown, Conn., as trustee, dated June 2, 1897, and said the Middlesex Banking Company in order to secure the payment hereof and of all other bonds of said series, has deposited with the Columbia Trust Company as trustee, and in trust for the benefit of the lawful holders of the bonds of said series, certain moneys, or notes, obligations, assignments, or deeds of trust, equal in amount to the bonds so issued, and such securities are guaranteed by said the Middlesex Banking Company to be valid and subsisting obligations and securities constituting first liens on real estate in the states and territories of the United States of America."

In addition to its bonds, the plaintiff had outstanding a large amount of what it terms "guaranteed real estate securities," representing mortgage notes and mortgages made in favor of plaintiff and subsequently assigned by it to purchasers thereof. These mortgages bear the written guaranty of the plaintiff, and have attached thereto interest coupons similar in form to those upon

its "debenture bonds." The borrower, however, in such a case, gives the plaintiff a separate obligation, payable in installments, and this second obligation represents the excess interest on which the borrower and the plaintiff have agreed, and is over and above what plaintiff is obligated to pay the Eastern investor. In other words, this second obligation of the borrower represents the gross profit in the transaction and becomes the property of the plaintiff.

Plaintiff sells most of its bonds and makes most of its loans through the employment of agents, and obtains a profit for itself by its ability to sell its bonds at a low rate) of interest (usually 5 per centum)' to investors in the East, and then loans the funds thus obtained on Western or Southern land mortgages at a much higher rate of interest, sometimes as high as 9 per centum. Only where investors purchase plaintiff's so-called "debenture bonds," or the original obligations of mortgagors called "guaranteed real estate securities," do the investors come in direct contact with the plaintiff or any of its executive officers.

Plaintiff's gross income for the years under consideration was as follows:

| Year. | Gross Income. |
|---|---|
| 1909 | $401,846.31 |
| 1910 | 405,335.46 |
| 1911 | 364,663.72 |
| 1912 | 341,376.04 |

—the greater part of which came from the interest payments made to it on Western and Southern land mortgages, though some of it represented commissions paid on land transactions and rentals from a system of safe-deposit boxes and vaults which plaintiff maintains at its home office. It also received a part thereof from rentals and sales made by a holding company of lands taken by plaintiff on foreclosure.

During the years under consideration the plaintiff paid as interest on its so-called "debenture bonds" and to holders of "guaranteed real estate securities" as follows:

| Year. | Amount. |
|---|---|
| 1909 | $240,819.47 |
| 1910 | 241,497.20 |
| 1911 | 220,777.51 |
| 1912 | 212,436.47 |

—and in its return of annual net income to the United States internal revenue collector for each of the above years deducted the sums so paid during the respective year in estimating its net income, and thereby was enabled to show that there was no tax payable by it under section 38 of the act of Congress of August 5, 1909, entitled "An act to provide revenue, equalize duties and encourage the industries of the United States, and for other purposes."

When making its return of net income plaintiff changed, by erasures and interlineations, the general blank form of return which was furnished by the United States internal revenue office, so that the items concerning the amount of interest which was paid in 1909, reads:

6. (a) Total amount of interest paid January 1 to December 31 on general indebtedness not exceeding the amount of paid-up capital stock outstanding at the close of the year ............................................. $  1,385.56

(b) Interest on evidences of indebtedness issued to customers for money left with us by them...................... $240,819.47

Plaintiff's return for 1910, amended as stated above, reads:

6. (a) Total amount of interest paid January 1 to December 31 on general indebtedness not exceeding the amount of paid-up capital stock outstanding at the close of the year ............................................. $  1,625.57

(b) Interest on evidences of indebtedness issued to customers for money left with us by them....................... $241,497.20

Plaintiff's return for 1911, amended as stated above, reads:

6. (a) Total amount of interest paid January 1 to December 31 on general indebtedness not exceeding the amount of paid-up capital stock outstanding at the close of the year $ 4,900.76

(b) Interest on evidences of indebtedness issued to customers for money left with us by them...................... $220,777.51

Plaintiff's return for 1912, amended as stated above, reads:

6. (a) Total amount of interest paid January 1 to December 31 on general indebtedness not exceeding, etc............ $ 1,482.58

(b) Total amount of interest paid within the year on deposits made with us by customers for which are issued our debentures and income and installment contracts...... $212,436.47

Notwithstanding the deductions for interest paid investors by plaintiff, when making its return of net income to the internal revenue collector for these years, the Commissioner of Internal Revenue refused to allow plaintiff the benefit of said deductions, and caused said returns to be so amended as to show plaintiff liable to pay the following taxes:

| Year. | Amount. |
|---|---|
| 1909 | $1,798.61 |
| 1910 | 1,905.68 |
| 1911 | 2,064.56 |
| 1912 | 1,782.84 |

—and assessed said sums against plaintiff as the tax payable under said act.

At no time has any material difference existed between the plaintiff and the Commissioner of Internal Revenue in relation to any items appearing in plaintiff's respective returns of net income during the years in question, other than that concerning the items covering these interest payments and for which plaintiff claimed the right to make deductions in said returns. And that is the question on which the parties were at issue at the hearing of this cause.

On January 22, 1912, under threat of execution being issued against it, the plaintiff paid, under protest, to defendant as collector of internal revenue for the district of Connecticut, the sum of $1,798.61, and then and there demanded that said sum be refunded. On April 18, 1912, the Commissioner of Internal Revenue, however, refused plaintiff's said demand, and no part of said sum of $1,798.61, thus paid as the tax assessed under said act for the year 1909, has ever been returned to the plaintiff.

On January 22, 1912, likewise under threat of execution being issued against it, plaintiff paid, under protest, to defendant as collector of internal revenue for the district of Connecticut, the sum of $1,905.68, the tax assessed against it by the Commissioner of Internal Revenue for the year 1910, and at the same time made demand that the said amount be refunded. On April 18, 1912, the Commissioner of Internal Revenue refused said demand, and no part of said sum has ever been returned to the plaintiff.

On June 28, 1912, under threat of execution being issued against it, the plaintiff paid, under protest, to defendant, as collector of internal revenue for the district of Connecticut, the sum of $2,064.56, the same being the tax assessed against it on its net income for 1911, and then and there demanded that the full amount be refunded. On September 9, 1912, the commissioner refused plaintiff's demand in this respect, and defendant has never refunded any portion of said sum.

On June 30, 1913, under like threat of execution being issued against it, the plaintiff paid, under protest, to defendant, as collector of internal revenue for the district of Connecticut, the sum of $1,782.84, this being the amount of tax assessed against it for the year 1912, and then and there demanded that the full amount be refunded. On August 29, 1913, the Commissioner of Internal Revenue refused plaintiff's demand, but offered to refund to plaintiff $167.91 of the money which the plaintiff had so paid, but this offer the plaintiff refused.

During the years 1909, 1910, 1911, and 1912 plaintiff was not requested, nor did it of its own accord, make a report to the bank commissioners of the

state of Connecticut, as is required of banks and trust companies by section 3416 of the General Statutes of Connecticut, Revision 1902, which reads: "Each state bank and trust company shall make to the bank commissioners not less than five reports during each year, verified by the oath of its cashier or treasurer. Each such report shall exhibit in detail and under appropriate heads, according to the form which may be prescribed by the commissioners, the resources and liabilities of such bank or trust company at the close of business on any past day specified by the commissioners. Such report shall be transmitted to the commissioners within ten days after the receipt of a request therefor from them, and shall be published, in such form as they may prescribe, in a newspaper in the county where such bank or trust company is located. Every bank or trust company which fails to make and transmit any such report, when requested by the commissioners, shall forfeit to the state ten dollars for each day that it delays to transmit such report."

Plaintiff did, however, during 1909, 1910, 1911, and 1912, make annual reports to the commissioner on building and loan associations, for the state of Connecticut, similar in form to the statement which it rendered the commissioner for the year ending June 30, 1913, which is as follows:

**The Middlesex Banking Company,**

Middletown, Conn.

Statement, June 30, 1913.

Assets.

| | |
|---|---:|
| Loans secured by first liens on real estate | $3,781,096.89 |
| Loans secured by second liens on real estate | 49,995.04 |
| Loans on collateral security | 100,672.27 |
| Stocks and bonds | 116,230.00 |
| Office building | 26,500.00 |
| Furniture and fixtures, West | 6,396.75 |
| Past-due interest remitted for, but not paid us | 30,223.53 |
| Due from branch offices | 113,407.95 |
| Due from sundry persons and agents | 53,399.95 |
| Due from banks and bankers | 201,873.81 |
| Accrued interest on loans owned by the company | 66,186.86 |
| Cash in till | 2,068.73 |
| Other assets, viz.: | |
|     Guaranteed real estate securities outstanding | $2,995,317.05 |
|     Topographical records | 14,000.00 |
|     Due from bond sales to insurance companies | 26,660.40 |
|       Total | $7,584,929.23 |

Liabilities.

| | |
|---|---:|
| Capital stock paid in | $ 311,832.42 |
| Surplus fund | 244,000.00 |
| Undivided profits | 18,312.70 |
| Debenture bonds outstanding | 3,200,661.09 |
| Dividends unpaid | 1,292.13 |
| Accrued interest on debenture bonds | 43,907.27 |
| Due to branch offices | 27,630.05 |
| Other liabilities, viz.: | |
|     Guaranteed real estate securities | $2,995,317.05 |
|     Installment debenture reserve | 664,898.67 |
|     Single payment bond reserve | 10,649.63 |
|     Installment debenture bonds | 33,473.92 |
|     Income contract reserve | 32,420.23 |
|     Due to sundry persons | 534.07 |
|       Total | $7,584,929.23 |

Section 38 of the said act of August 5, 1909, in so far as is applicable to this case, provides:

"That every corporation, joint stock company or association, organized for profit and having a capital stock represented by shares, * * * now or hereafter organized under the laws of the United States or of any state or territory of the United States * * * or now or hereafter organized under the laws of any foreign country and engaged in business in any state or territory of the United States * * * shall be subject to pay annually a special excise tax with respect to the carrying on or doing business by such corporation, joint stock company or association, * * * equivalent to one per centum upon the entire net income over and above five thousand dollars received by it from all sources during such year, exclusive of amounts received by it as dividends upon stock of other corporations, joint stock companies or associations, * * * subject to the tax hereby imposed: * * * Provided, however, that nothing in this section contained shall apply to * * * domestic building and loan associations, organized and operated exclusively for the mutual benefit of their members. * * *

"Second. Such net income shall be ascertained by deducting from the gross amount of the income of such corporation, joint stock company or association, * * * received within the year from all sources, (first) all the ordinary and necessary expenses actually paid within the year out of income in the maintenance and operation of its business and properties, including all charges such as rentals or franchise payments, required to be made as a condition to the continued use or possession of property; (second) all losses actually sustained within the year and not compensated by insurance or otherwise, including a reasonable allowance for depreciation of property, if any; * * * (third) interest actually paid within the year on its bonded or other indebtedness to an amount of such bonded and other indebtedness not exceeding the paid-up capital stock of such corporation, joint stock company or association, * * * outstanding at the close of the year, and in the case of a bank, banking association or trust company, all interest actually paid by it within the year on deposits; (fourth) all sums paid by it within the year for taxes imposed under the authority of the United States or of any state or territory thereof, or imposed by the government of any foreign country as a condition to carry on business therein; (fifth) all amounts received by it within the year as dividends upon stock of other corporations, joint stock companies or associations, * * * subject to the tax hereby imposed."

The court makes the foregoing special finding of facts and directs that the same be entered upon the record as a special verdict.

Silas A. Robinson and Frank D. Haines, both of Middletown, Conn., for plaintiff.

Frederick A. Scott, U. S. Atty., of Hartford, Conn., for defendant.

THOMAS, District Judge. This action is brought to recover certain taxes which plaintiff paid, under protest, to defendant, as collector of internal revenue for the district of Connecticut, in settlement of the amounts which the United States Commissioner of Internal Revenue caused to be assessed against it under section 38 of the act of Congress of August 5, 1909, entitled "An act to provide revenue, equalize duties and encourage the industries of the United States and for other purposes."

The sole question is this: Should the plaintiff have been allowed, as a deduction, the amount which it paid as interest to purchasers of certain evidences of indebtedness, which it issues and terms "debenture bonds," and the amount which it paid to purchasers of mortgage notes and bonds secured by mortgages on real estate made in plaintiff's favor, and subsequently sold and assigned by plaintiff to investors with its guaranty, these mortgages being what plaintiff terms "guaranteed real estate securities"?

Plaintiff claims that it was entitled, as deductions, when estimating its net income for the years 1909, 1910, 1911, and 1912, to the amounts of all these interest payments. The government resists this claim.

In 1872 the plaintiff was incorporated under the name of the "Middlesex Trust Company" by the General Assembly of the state of Connecticut. In 1875, by legislative enactment, its name was changed to the "Middlesex Banking Company," by which name it has ever since been known, and under which it has conducted its business, with its home office in the city of Middletown, Conn., and at the time of hearing this case it had outstanding a paid-up capital stock of $338,400.

By general amendments to the plaintiff's charter which were granted in 1889 and 1899, and under which it has ever since been acting, it is provided that:

"The corporation hereby created shall have power to receive on deposit or in custody for safe-keeping, bonds, plate, jewelry, stocks, and other valuable property upon such terms and for such compensation as may be agreed upon by the said corporation and by the depositors of any such property aforesaid; to receive money on deposit and to allow and pay interest on said money, and to loan the same at interest; to borrow money and issue its obligations negotiable or otherwise therefor, in which obligations, if secured by first liens upon real estate worth at least double the face thereof, holders of trust funds may invest such funds; all the property and estate of every kind belonging to said corporation shall be and stand charged with the fulfillment of said obligations as the first and prior liens thereon in case of the failure of said corporation: * * * Provided, however, that if any trustee or holder of trust funds shall hereafter invest any such trust funds in the obligations of said company as is provided in this resolution such trustee or holder of trust funds shall be personally liable together with the surety on his bond, if any bond be given, for any and all loss or depreciation in value which may result to such funds while so invested, if the real estate securing such investments shall not at all times be worth double the face value of the obligations purchased by such trustee or holder of trust funds."

Aside from its paid-in capital, plaintiff obtains the necessary funds with which to carry on its business from the sale of its so-called "debenture bonds" and "guaranteed real estate securities," and also from the receipts of a system of safe-deposit vaults and boxes which it maintains in its home office building. It then invests these funds in Western real estate mortgages at a high rate of interest, sometimes as high as 9 per centum, at the same time selling its bonds and other securities to Eastern investors at a much lower rate, usually not higher than 5 per centum. The difference in the interest rate thus paid and thus received represents the gross profit which the plaintiff obtains in the transaction.

Plaintiff's "debenture bonds" are issued in consecutive monthly series in denominations of $100, $200, $250, $500, $1,000, and $5,000, and are made "payable to bearer," or, if registered, "to the registered holder" thereof, and are underwritten by a trust company. The plaintiff in turn secures the trust company by depositing with it collateral of sufficient value, which consists mostly of Western real estate mortgages on which it has loaned its funds. Each bond bears the underwriting agreement, and at the time of the trial of this case something over $3,000,000 of bonds were outstanding in the hands of investors, as was also a large amount of its "guaranteed real estate securities."

All of the bonds contain a clause by which the plaintiff reserves the right (at its option) to retire the same after due publication of the notice provided for in and required by the bond. Another clause provides that:

"This bond is one of a series of bonds of like form and tenor, issued by said the Middlesex Banking Company under and subject to the provisions of a certain agreement between said the Middlesex Banking Company and the Columbia Trust Company of Middletown, Connecticut, as trustee, dated June 2, 1897, and said the Middlesex Banking Company, in order to secure the payment hereof and of all other bonds of said series, has deposited with the Columbia Trust Company as trustee and in trust for the benefit of the lawful holders of the bonds of said series, certain moneys, or notes, obligations, assignments, or deeds of trust, equal in amount to the bonds so issued, and such securities are guaranteed by said the Middlesex Banking Company to be valid and subsisting obligations and securities constituting first liens on real estate in the states and territories of the United States of America."

To each of these bonds is attached 16 coupons, which read as follows:

| | |
|---|---|
| **Payable at the Equitable Trust Co., New York.** | On the first $6.25 <br><br> day of ................................ <br><br> The Middlesex Banking Company <br><br> promises to pay Six $^{25}/_{100}$ Dollars at the Banking House of the Company in Middletown, Connecticut, or ~~at the MERCHANTS NATIONAL BANK OF NEW YORK,~~ to bearer, being six months' interest on real estate first mortgage trustee <br><br> Bond No. ——— Series ——— <br> Secretary. President. |

Coupons of like form are also attached to each of the so-called "guaranteed real estate securities," the interest payable under the coupons so attached being the rate agreed upon by the plaintiff and the Eastern investor, but not of as high a rate as that which the mortgagor has agreed to pay to plaintiff on the loan. Plaintiff in such a case obtains from the mortgagor separate obligations for the difference in the rate, and retains these in its possession, although it has parted with the mortgagor's original obligation. The excess interest represented by these separate obligations of the mortgagor in such cases is the plaintiff's gross profit in this kind of transaction.

Plaintiff sells almost all of its bonds and "guaranteed real estate securities" and makes most of its loans through the employment of agents, so that in only a comparatively few instances do the investors in these bonds and securities come in direct contact with plaintiff or any of its officers, and it is only in cases where investors register bonds that their names are known to the plaintiff.

Plaintiff paid as interest on its so-called "debenture bonds," and to holders of its "guaranteed real estate securities" during the years involved in this suit, as follows:

| | |
|---|---|
| 1909 | $240,819.47 |
| 1910 | 241,497.20 |
| 1911 | 220,777.51 |
| 1912 | 212,436.47 |

In making its annual return of net income to the United States internal revenue collector for each of the above-mentioned years, the plaintiff deducted the sum so paid as interest, and it was thereby enabled to show that no excise tax was payable by it under the act of 1909. When making its return of net income for these years, plaintiff changed, by erasures and interlineations, the general blank form of return which is furnished by the United States internal revenue office, so that the items concerning the amount of interest which was paid in 1909 read:

6. (a) Total amount of interest paid January 1 to December 31 on general indebtedness not exceeding the amount of paid-up capital stock outstanding at the close of the year........ $  1,385.56
   (b) Interest on evidences of indebtedness issued to customers for money left with us by them.......................... $240,819.47

Plaintiff's return for 1910, amended as stated above, reads:

6. (a) Total amount of interest paid January 1 to December 31 on general indebtedness not exceeding the amount of paid-up capital stock outstanding at the close of the year....... $  1,625.57
   (b) Interest on evidences of indebtedness issued to customers for money left with us by them.......................... $241,497.20

Plaintiff's return for 1911, amended as stated above, reads:

6. (a) Total amount of interest paid January 1 to December 31 on general indebtedness not exceeding the amount of paid-up capital stock outstanding at the close of the year........ $  4,900.76
   (b) Interest on evidences of indebtedness issued to customers for money left with us by them.......................... $220,777.51

Plaintiff's return for 1912, amended as stated above, reads:

6. (a) Total amount of interest paid January 1 to December 31 on general indebtedness not exceeding, etc.................. $  1,482.58
   (b) Total amount of interest paid within the year on deposits made with us by customers for which are issued our debentures and income and installment contracts.......... $212,436.47

The Commissioner of Internal Revenue, however, refused to allow the plaintiff the deductions claimed, and caused the plaintiff's income returns for these years to be so amended as to show the plaintiff liable to pay a tax on its net income, as follows:

| Year. | Amount of Tax. |
|---|---|
| 1909 | $1,798.61 |
| 1910 | 1,905.68 |
| 1911 | 2,064.56 |
| 1912 | 1,782.84 |

—and assessed said sums against the plaintiff as the tax payable under said act. The action of the Commissioner in refusing to allow the claimed deductions, and in levying and collecting the tax for the amounts specified above, are the questions raised in this suit.

On January 22, 1912, plaintiff paid, under protest, to defendant, as collector of internal revenue for the district of Connecticut, the sum of $1,798.61 for the year 1909 and $1,905.68 for the year 1910, the amount of the tax assessed against it for each respective year, and under threat of execution being issued against it. Thereupon it made demand that said sums be immediately refunded, but on April 18,

1912, the Commissioner of Internal Revenue refused plaintiff's demand, and no part of the money thus paid has been returned to plaintiff.

On June 28, 1912, under a like threat of execution being issued against it, plaintiff, under protest, paid to defendant, as collector of internal revenue for the district of Connecticut, the sum of $2,064.56, the amount of the tax assessed against it on its net income for 1911, and then and there demanded that the full amount be refunded, but on September 9, 1912, the Commissioner refused plaintiff's said demand, and defendant has never since refunded to plaintiff any portion of the sum thus paid.

On June 30, 1913, under like threat of execution being issued against it, plaintiff again paid, under protest, to the defendant, as collector, the sum of $1,782.84, being the amount of the tax assessed against it on its net income for the year 1912, and then and there demanded that said sum be refunded; but on August 29, 1913, the Commissioner of Internal Revenue refused to honor plaintiff's said demand, other than to offer to return to plaintiff $167.91 of the amount paid as the tax for that year, which offer plaintiff refused, and no part of said $1,782.84 has ever been paid back.

Section 38 of the act of Congress now under consideration, so far as it is applicable here, provides:

"That every corporation, joint stock company or association, organized for profit and having a capital stock represented by shares, * * * now or hereafter organized under the laws of the United States or of any state or territory of the United States or under the acts of Congress applicable to Alaska or the District of Columbia, * * * shall be subject to pay annually a special excise tax with respect to the carrying on or doing business by such corporation, joint stock company or association, * * * equivalent to one per centum upon the entire net income over and above five thousand dollars received by it from all sources during such year, exclusive of amounts received by it as dividends upon stock of other corporations, joint stock companies or associations, * * * subject to the tax hereby imposed. * * *

"Second. Such net income shall be ascertained by deducting from the gross amount of the income of such corporation, joint stock company or association, * * * received within the year from all sources, (first) all the ordinary and necessary expenses actually paid within the year out of income in the maintenance and operation of its business and properties, * * * (second) all losses actually sustained within the year and not compensated by insurance or otherwise, * * * (third) interest actually paid within the year on its bonded or other indebtedness to an amount of such bonded and other indebtedness not exceeding the paid-up capital stock of such corporation, joint stock company or association, * * * outstanding at the close of the year, and in the case of a bank, banking association or trust company all interest actually paid by it within the year on deposits. * * *"

In order that the plaintiff may prevail in this case, it must show, first, that it is in fact either a bank, banking association, or trust company; and, second, that the interest payments which it made, and for which it now claims a judgment, were interest payments made to depositors. In this it has failed.

Section 3416 of the General Statutes of Connecticut (Revision of 1902), which was in force during the years 1909, 1910, 1911, and 1912, requires that each state bank shall render to the bank commissioners not less than five reports during each year, verified by the oath of its

cashier or treasurer; that each report shall exhibit in detail and under appropriate heads, according to the form which may be prescribed by the commissioners, the resources and liabilities of such bank or trust company at the close of business on any past day specified by the commissioners; that such reports shall be transmitted to the commissioners within ten days after the receipt of a request therefor from them, and shall be published in such form as they may prescribe, in a newspaper in the county where such bank or trust company is located; and that every bank or trust company which fails to make and transmit any such report, when requested by the commissioners, shall forfeit to the state $10 for each day that it delays to transmit such report.

Notwithstanding this statute, plaintiff was not requested by the bank commissioners to make any report, and did, not of its own accord make any of the reports required by the statute during any of the years in question, nor for some years prior thereto, but did make a report annually to the Connecticut commissioner on building and loan associations. Its report for the year ending June 30, 1913, is as follows:

The Middlesex Banking Company,
Middletown, Conn.
Statement, June 30, 1913.
Assets.

| | |
|---|---:|
| Loans secured by first liens on real estate | $3,781,096.89 |
| Loans secured by second liens on real estate | 49,995.04 |
| Loans on collateral security | 100,672.27 |
| Stocks and bonds | 116,230.00 |
| Office building | 26,500.00 |
| Furniture and fixtures, West | 6,396.75 |
| Past-due interest remitted for, but not paid to us | 30,223.53 |
| Due from branch offices | 113,407.95 |
| Due from sundry persons and agents | 53,399.95 |
| Due from banks and bankers | 201,873.81 |
| Accrued interest on loans owned by the company | 66,186.86 |
| Cash in till | 2,068.73 |
| Other assets, viz.: | |
|     Guaranteed real estate securities outstanding | $2,995,317.05 |
|     Topographical records | 14,000.00 |
|     Due from bond sales to insurance companies | 26,660.40 |
| **Total** | **$7,584,929.23** |

Liabilities.

| | |
|---|---:|
| Capital stock paid in | $ 311,832.42 |
| Surplus fund | 244,000.00 |
| Undivided profits | 18,312.70 |
| Debenture bonds outstanding | 3,200,661.09 |
| Dividends unpaid | 1,292.13 |
| Accrued interest on debenture bonds | 43,907.27 |
| Due to branch offices | 27,630.05 |
| Other liabilities, viz.: | |
|     Guaranteed real estate securities | $2,995,317.05 |
|     Installment debenture reserve | 664,898.67 |
|     Single payment bond reserve | 10,649.63 |
|     Installment debenture bonds | 33,473.92 |
|     Income contract reserve | 32,420.23 |
|     Due to sundry persons | 534.07 |
| **Total** | **$7,584,929.23** |

From this report it will be seen that there is nothing in it to indicate that the plaintiff received any deposits of money from any person or persons whatsoever.

While in the act of Congress here under consideration (36 Stat. c. 6, p. 113) the terms "bank," "banking association," and "trust company" are used, yet the act contains nothing whereby an idea may be gained as to what was intended by Congress to be included under those terms. It must be strictly construed against the government. By comparison with former legislation on the same subject some help may be gained in construing this statute. In this respect it differs from the act of June 30, 1864 (Rev. Stat. U. S. § 3407 [U. S. Comp. St. 1913, § 6288]) in which act Congress defined the terms "bank" and "banker" as:

"Every incorporated or other bank, and every person, firm, or company having a place of business where credits are opened by the deposit or collection of money or currency, subject to be paid or remitted upon draft, check, or order, or where money is advanced or loaned on stocks, bonds, bullion, bills of exchange, or promissory notes, or where stocks, bonds, bullion, bills of exchange, or promissory notes are received for discount or for sale, shall be regarded as a bank or as a banker."

In the act of June 30, 1864, it was also provided that the section which required a tax to be paid monthly by any person, bank, association, company, or corporation engaged in the business of banking, upon the average amount of deposits of money made therein, subject to checks, etc., should not apply to any savings bank having no capital stock, and whose business was confined to receiving deposits and loaning the same on interest for the benefit of the depositors only, and which did no other kind of a banking business.

Keeping in mind, therefore, the similarity of purpose of both of these acts, viz., to produce revenue for the government, it seems reasonable to assume that Congress intended by the act of August 5, 1909, to confine the allowed reduction of interest payments to such banks or banking associations, as would come within the definition and exception of the act of June 30, 1864, and in addition to such institutions it also permitted trust companies which pay interest on funds deposited therein by customers to have the benefit, by deduction, of such payments. Congress no doubt believed that, by allowing the interest thus paid to depositors to be deducted from the income of such banks, banking associations, or trust companies, it was allowing an exemption in favor of a large class of small depositors to whom it desired to show every consideration, for the purpose of fostering a spirit of frugality and thriftiness.

That the plaintiff does not come within the class of institutions intended by Congress to have the benefit of such deductions seems clear, as the method of conducting its business indicates that it obtains funds for its own use by the sale of its own bonds, and of securities made in its favor in the first place and bearing its own guaranty. This being so, as I view it, the plaintiff comes within that class of corporations known as "investment and mortgage loan companies," and the decision in this case must therefore follow that reported in Selden v. Equitable Trust Co., 94 U. S. 419, 24 L. Ed. 249.

The rule which was applied by the Circuit Court of Appeals for the Second Circuit in the case of Anderson v. 42 Broadway Co., reported in 213 Fed. 777, 130 C. C. A. 338, cited and relied upon by the plaintiff, can have no application here, as the facts in that case disclose that the interest payments there claimed for deduction were payments of interest on bonds secured by mortgages on that company's sole piece of real estate, and were therefore proper deductions under the provision contained in the act relative to the allowance of—

"all the ordinary * * * expenses actually paid within the year out of income in the maintenance and operation of its business and properties, including all charges such as rentals or franchise payments, required to be made as a condition to the continued use or possession of property."

Had the interest payments for which the plaintiff in this case claims a deduction been payments made by it to holders of mortgages on its own properties, this court would be bound to apply the rule sanctioned in the above-mentioned case. In view of the difference in the situation of the parties in that case and this, and of the methods of transacting business, judgment here must be rendered for the defendant.

Decree accordingly.